IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

TI'JAI HARRIS,

    Plaintiff,

v.

QUANTIX SCS, LLC,

    Defendant.

CIVIL ACTION NO.: 4:22-cv-253

**O R D E R**

This is a race discrimination and retaliation case arising out of Plaintiff Ti'Jai Harris's employment assignment with Defendant Quantix SCS, LLC, and his subsequent termination. Presently before the Court is Defendant's Motion for Summary Judgment, in which it argues, among other things, that it had a legitimate reason for requesting the termination of Plaintiff's employment assignment. (Doc. 21; doc. 21-1, pp. 11–14, 17–19.) Plaintiff has filed a Response, (doc. 28), and Defendant has filed a Reply, (doc. 30). For the reasons explained more fully below, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. 21.)

BACKGROUND

Plaintiff, an African American male, was assigned to work for Defendant through AtWork Personnel ("AtWork"), a staffing company which is not a party to this lawsuit. (Doc. 28-1, pp. 1–3; doc. 1, p. 2.) Defendant is a company that provides, among other things, distribution and logistics services. (Doc. 28-1, pp. 1, 3.) Plaintiff was assigned to work as a temporary rail worker at Defendant's facility in Rincon, Georgia. (Id. at pp. 1–3.) Plaintiff's assignment began on April

11, 2022, and he worked under Rail Supervisor Tracy Doyal-Monks.[1] (Id. at pp. 2–4.) Doyal-Monks oversaw rail operations, supervised rail works, and maintained the authority to make personnel and staffing decisions related to the rail workers she supervised. (Id. at pp. 2–3.) Defendant submitted evidence that, on April 27, 2022, Jacoby Holden, a recruiter at AtWork, received an email from Defendant requesting the termination of Plaintiff's assignment to it due to its dissatisfaction with his performance (namely, that he was using his cell phone while operating heavy equipment and displayed a poor attitude when he was corrected). (Doc. 21-9, pp. 2, 5.) According to this same evidence, however, Holden was allowed to resume Plaintiff's assignment to Defendant after he had a discussion with Plaintiff. (Id.)

Doyal-Monks led daily pre-shift meetings where she would discuss the tasks to be completed in the upcoming shifts as well as any issues from past shifts. (Doc. 28-1, pp. 6–7.) Rail workers from both the day and night shifts attended these daily meetings. (Id. at p. 6.) On May 17, 2022, during[2] a pre-shift meeting, Plaintiff stood up at the conference table, with Doyal-Monks in front of him, and raised his voice. (Id. at p. 7; see doc. 21-4, p. 17.) According to Plaintiff, he was complaining to Doyal-Monks that he and others were experiencing racism. (Doc. 21-4, pp. 17–20.) Plaintiff contends that this was the second time he had complained to Doyal-Monks about racism, with the first complaint having been made less than a week before his termination. (Doc. 28-2, p. 1; doc. 21-4, pp. 12–13, 17.) Plaintiff denies making threats or acting in a threatening manner, (doc. 28-1, p. 8), but Doyal-Monks contends she "felt scared and threatened" by Plaintiff's "intense and threatening" behavior, (doc 21-8, p. 4). As Plaintiff left the conference room and

---

[1] Neither party has stated Doyal-Monks's race.

[2] Though Plaintiff now says this was "after the pre-shift meeting," (doc. 28-1, p. 7), Plaintiff stated multiple times in his deposition that the altercation began "during that meeting," (doc. 21-4, pp. 14, 17.)

made his way out to the parking lot, he yelled, cursed,[3] and loudly criticized Doyal-Monks's qualifications and managerial skills. (Id. at pp. 8–9; see doc. 21-4, p. 20.) This took place in front of other employees. (Doc. 28-1, p. 9; see doc. 21-8, pp. 4–5.) Plaintiff then got in his car and left. (Doc. 21-8, p. 9.) Doyal-Monks made the decision to end Plaintiff's temporary assignment with Defendant. (Id. at p. 6.) According to Defendant, Doyal-Monks called Holden and requested the termination of Plaintiff's employment assignment, citing Plaintiff's "outburst." (Doc. 21-8, p. 5; doc. 21-9, p. 2.)[4]

Plaintiff returned to the facility that evening,[5] at which point Doyal-Monks and two other managers asked Plaintiff to leave the facility because he was terminated. (Id. at p. 11.) Plaintiff responded by cursing at them. (Id. at p. 12.) James Loving, another temporary worker, testified that he "feared for [his] safety" while listening to Plaintiff. (Doc. 21-6, pp. 2–3.) The following morning, Doyal-Monks emailed Holden and said that Plaintiff should not be sent back to work there. (Doc. 28-1, p. 13; doc. 21-9, p. 9.)

Plaintiff filed suit against Defendant on October 25, 2022, alleging claims of racial discrimination and retaliation under 42 U.S.C. § 1981. (Doc. 1.) Along with damages, he seeks attorney's fees, punitive damages, and injunctive relief. (Id. at pp. 5–6.)

---

[3] Plaintiff now denies he cursed at Doyal-Monks following the pre-shift meeting altercation. (Doc. 28-1, p. 9.) Yet when asked in his deposition whether he cursed in the altercation, Plaintiff said, "I know I cussed, I'm grown." (Doc. 21-4, p. 20; see also id. ("Q. You kind of screamed and yelled when you were out there?" "A. Yeah, we were outside, I'm dealing with racism on the job, yeah.").)

[4] Plaintiff denies that Doyal-Monks called Holden but cites only to his own testimony, in his Declaration, that *Holden* did not contact *him* before he returned to the facility later that same evening. (Doc. 28-1, p. 10; doc. 28-3, p. 7.) Plaintiff does not provide evidence—in his Declaration or elsewhere—that Doyal-Monks did not call Holden following the initial altercation on May 17, 2022. (See doc 28-3, p. 7.)

[5] Though Plaintiff now says he "did not return the evening of May 17," (doc. 28-1, p. 10), he clearly states in his Declaration, "[l]ater that evening around 6:00[ ]pm, I returned to the facility," (doc. 28-3, p. 5; see also doc. 28-2, p. 4 ("On May 17, 2022, around 6:00PM, [Petitioner] returned to the facility for his evening shift . . .").)

**STANDARD OF REVIEW**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). Thus, the Court will view the record and all reasonable inferences that can be drawn from

it in Plaintiff's favor.  However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (citation and emphasis omitted).

## DISCUSSION

**I.     Plaintiff's § 1981 Race Discrimination Claim.**

Plaintiff first asserts that he was subject to racial discrimination in violation of 42 U.S.C. § 1981. (Doc. 1, pp. 3–4.)  "Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." Jenkins v. Nell, 26 F.4th 1243, 1249 (11th Cir. 2022) (quoting Ferrill v. Parker Grp., Inc., 168 F.3d 468, 472 (11th Cir. 1999)).  "A plaintiff may use either direct evidence or circumstantial evidence to show race discrimination." Jenkins, 26 F.4th at 1249.  Plaintiff offers no direct evidence to support his claim and instead relies on the burden shifting framework set out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). (See doc. 28.)

Under the McDonnell Douglas framework, Plaintiff first has the burden of establishing a prima facie case of race discrimination. Jenkins, 26 F.4th at 1249.  To establish a prima facie case, the plaintiff must show: "(1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was qualified to perform the job in question; and (4) his employer treated 'similarly situated' employees outside his class more favorably." Id. (citing Lewis v. Union City, 918 F.3d 1213, 1220–21 (11th Cir. 2019)).  "If the plaintiff succeeds in making out a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." Lewis, 918 F.3d at 1221.  "Finally, should the defendant carry its burden, the plaintiff must then

5

demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that 'merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination.'" Id. (alterations adopted) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

### A.     Defendant's Nondiscriminatory Reason for its Actions

Defendant argues that even if Plaintiff can establish a prima facie case of discrimination, it is entitled to summary judgment because it had a legitimate, nondiscriminatory reason for terminating his employment.[6]  (Doc. 21-1, pp. 11–13.)  The Court agrees.

As laid out by the Eleventh Circuit, "[t]he legitimate, nondiscriminatory reason offered by an employer for an action need not be one a judge or juror would act on or approve . . . .  An employer must simply advance an explanation for its action that is not discriminatory in nature." Lee v. Safe-Dry Carpet & Upholstery, No. 20-14275, 2021 WL 3829028, at *3 (11th Cir. Aug. 27, 2021) (citing Schoenfeld v. Babbitt, 168 F.3d 1257, 1269 (11th Cir. 1999)).[7]  "An employer's burden to articulate a nondiscriminatory reason is a burden of production, not of persuasion," and is "exceedingly light."  Id. (quoting Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769–70 (11th Cir. 2005)).

Defendant contends that Plaintiff's undisputed conduct on May 17, 2022, is "more than enough" to satisfy this burden, because Plaintiff's "multiple face-to-face interactions that his supervisor and others perceived as threatening and aggressive easily clears the bar."  (Doc. 21-1,

---

[6]  Defendants also argue that Plaintiff cannot establish a prima facie case because he cannot show that Defendant treated similarly situated workers more favorably.  (Doc. 21-1, p. 10.)  In any event, because the Court is persuaded that Defendant terminated Plaintiff for a legitimate, nondiscriminatory reason, it assumes, without deciding, that Plaintiff has established a prima facie case of racial discrimination.

[7]  While many cases cited in this order were decided in the Title VII context, "[t]he elements of a claim of race discrimination under 42 U.S.C. § 1981 are . . . the same as a Title VII disparate treatment claim in the employment context."  Jenkins, 26 F.4th at 1249.

p. 13; doc. 30, p. 4.) Plaintiff "denies [that he] made any threats to Ms. Doyal-Monks or any other employee." (Doc. 28, p. 9.) Still, Plaintiff's subjective belief and acknowledgment that his conduct was threatening to someone is not required for Defendant to satisfy its burden. See Muhammad v. Audio Visual Servs. Grp., 380 F. App'x 864, 873 (11th Cir. 2010) ("Accepting as true [the Plaintiff]'s testimony that he did not articulate a threat during his conversation with [his supervisor], he admitted that his demeanor during this conversation was passionate, and he did not contest that [his supervisor] found his tone and demeanor to be offensive.") Likewise, here, Plaintiff concedes that he yelled and cursed at his supervisor, and he does not dispute that his actions were perceived as threatening by Doyal-Monks, Loving, and others. (Doc. 28-1, pp. 7–9.) In other words, "the Court's inquiry is limited to whether Defendant's decisionmakers *believed* that Plaintiff was guilty of the aggressive conduct. . . and, if so, whether that belief was the reason for the discharge." Bullington v. Jefferson S. Corp., No. 4:16-CV-0245-HLM-WEJ, 2017 U.S. Dist. LEXIS 217635, at *43 (N.D. Ga. Nov. 13, 2017) (alterations adopted) (quotations omitted).

"The courts have consistently ruled that '. . . disrupting the workplace' will not be tolerated or protected . . ." Grant v. Sch. Bd. of Miami-Dade Cnty., Fla., No. 06-20741-CIV, 2007 WL 3286762, at *3 (S.D. Fla. Aug. 24, 2007), *aff'd sub nom.* Grant v. Miami Dade Cnty. Sch. Bd., 284 F. App'x 779 (11th Cir. 2008) (quoting Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999)). Defendant has consistently maintained that it found Plaintiff's May 17, 2022, behavior to be "threatening, disrespectful," and "hostile," (doc. 28-6, pp. 5–6, 11–12), and it has presented evidence—including testimony from his supervisor and another temporary worker—to support this position. "Needless to say, this kind of aggressive behavior towards a coworker plainly constitutes a legitimate, race-neutral reason for [Plaintiff]'s termination." Michaels v. Sasser's Glass Works Inc., 662 F. Supp. 3d 1223, 1242 (S.D. Fla. 2023) (where the employee had

7

raised his voice and cursed at a supervisor in front of others).  Accordingly, Defendant has satisfied its "exceedingly light" burden of offering a legitimate, nondiscriminatory reason for Plaintiff's termination.  Vessels, 408 F.3d at 770.

### B. Plaintiff's Pretext Rebuttal

Because Defendant has discharged its burden of showing a legitimate nondiscriminatory reason for Plaintiff's termination, to survive Defendant's Motion for Summary Judgment, "[P]laintiff must . . . demonstrate that [D]efendant's proffered reason was merely a pretext for unlawful discrimination."  Lewis, 918 F.3d at 1221 (quoting Burdine, 450 U.S. at 256) (alterations adopted).  "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action."  Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1261 (11th Cir. 2001) (quoting Wolf v. Buss (Am.) Inc., 77 F.3d 914, 919 (7th Cir. 1996)).  "A reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'"  Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

Plaintiff contends Defendant's reasoning is pretextual because "Defendant's reasons for [Plaintiff's] termination have shifted over time."  (Doc. 28, p. 5.)  Specifically, Plaintiff argues that, in response to his written discovery asking for all the reasons he was terminated, Defendant did not include Plaintiff's conduct on May 17, 2022.  (Id.)  Plaintiff also claims that the reasons cited by Defendant in its response have since been placed in dispute by the record evidence.  (Id. at pp. 5–6.)  Contrary to Plaintiff's claims, however, Defendant's original discovery responses did in fact cite Plaintiff's "argumentative" and "hostile attitude" on May 17, 2022.  (Doc. 28-6, p. 5.)

Plaintiff is correct that "[p]retext may . . . be established by proof of inconsistent statements or shifting explanations for the adverse employment decision, suggesting that the articulated

8

reasons are recently fabricated or false." Walker v. St. Joseph's/Candler Health Sys., Inc., 506 F. App'x 886, 889 (11th Cir. 2013). But "[t]o withstand summary judgment, a plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could find them unworthy of credence.'" Toomer v. Caci, Inc.- Fed., No. 8:12-CV-2832-T-26EAJ, 2013 WL 12090674, at *6 (M.D. Fla. Dec. 13, 2013), *aff'd*, 566 F. App'x 886 (11th Cir. 2014) (quoting Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005)).

That Plaintiff's job performance had been called into question does not negate Defendant's reliance on the events of May 17, 2022, or suggest that it is pretext. *Additional* reasons for termination are not necessarily *inconsistent* reasons for termination. See Tidwell v. Carter Prod., 135 F.3d 1422, 1428 (11th Cir. 1998) ("[T]he existence of a possible additional non-discriminatory basis for [the plaintiff]'s termination does not, however, prove pretext.") The timeline and nature of events also suggests that Plaintiff's termination was based both on poor performance *and* his behavior on May 17, 2022. Defendant has submitted evidence corroborating Plaintiff's poor work performance. Namely, Holden received an email in April stating that Defendant wanted to end Plaintiff's assignment because of his performance (though Holden ultimately resumed Plaintiff's assignment). (Doc. 21-9, pp. 2, 5.) Defendant has also submitted evidence that Plaintiff's termination directly followed the altercation on May 17, 2022. Though Plaintiff disputes (without citing any support) the evidence that Doyal-Monks spoke with Holden over the phone on May 17, (doc. 28-1, p. 10), Plaintiff nevertheless admits that Doyal-Monks emailed Holden the very next day, May 18, 2022, requesting Plaintiff's termination, (id. at p. 13; doc. 21-9, pp. 3, 9.) Any previous issues Defendant had with Plaintiff do not suggest that Defendant's purported reason for dismissing Plaintiff for his behavior on May 17, 2022, is false or that discrimination is the real

9

reason. As a result, Plaintiff has failed to rebut Defendant's legitimate, nondiscriminatory reason for termination. Accordingly, the Court **GRANTS** Defendant's request for summary judgment as to Plaintiff's racial discrimination claim.

## II.     Plaintiff's § 1981 Retaliation Claim

Plaintiff also asserts he suffered retaliation under § 1981 when he "complain[ed] about . . . race discrimination" and was later terminated. (Doc. 1, p. 4.) "Retaliation against an employee who engages in statutorily protected activity is barred under . . . § 1981." Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1257–58 (11th Cir. 2012).

### A.     Plaintiff's Prima Facie Retaliation Case

"A retaliation claim based on circumstantial evidence is also analyzed under the McDonnell Douglas burden-shifting framework." Hampton v. Amedisys Ga., LLC, No. 22-11275, 2023 WL 152193, at *3 (11th Cir. 2023). A plaintiff may establish a prima facie case of retaliation by presenting evidence that "(1) he engaged in statutorily protected conduct, (2) the employer took action that would have been materially adverse to a reasonable employee, and (3) there is a causal connection between the protected conduct and the adverse employment action." Walker v. Sec'y, U.S. Dep't of Air Force, 518 F. App'x 626, 627 (11th Cir. 2013).

Defendant does not dispute that Plaintiff engaged in protected activity or that he suffered an adverse employment action, but instead focuses its argument on the lack of causal connection between Plaintiff's discrimination complaints and his termination. (Doc. 21-1, pp. 16–17.) Specifically, Defendant argues that the undisputed events of May 17, 2022, severed the causal connection between Plaintiff's "vague alleged complaints" and termination. (Id. at p. 16 (quoting Hankins v. AirTran Airways, Inc., 237 F. App'x 513, 521 (11th Cir. 2007).) Plaintiff contends he twice complained of racial discrimination to Doyal-Monks in the week leading up to his

10

termination, including once the same day as his termination, and this temporal proximity creates a genuine issue of material fact about causation. (Doc. 28, p. 3; doc. 28-3, pp. 3–5.) Defendant nevertheless argues that, even assuming Plaintiff engaged in this protected activity, his termination resulted from his aggressive behavior on May 17, 2022, rather than his complaints. (Doc. 30, pp. 4–5.)

To establish the causation element of the prima facie case, a plaintiff must show that: (1) the decisionmakers were aware of his protected conduct and (2) his protected activity and the adverse employment action were not wholly unrelated. Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000), *abrogated on other grounds by* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). That is, to satisfy the causation requirement, a plaintiff must show that his "protected activity was a but-for cause of the alleged adverse action by the employer." Gogel v. Kia Motors Mfg. of Ga., Inc., 967 F.3d 1121, 1135 (11th Cir. 2020).

Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated. See Thomas v. Cooper Lighting, Inc., 506 F.3d 1361 (11th Cir. 2007). Even so, "[i]ntervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action." Henderson v. FedEx Express, 442 F. App'x 502, 506 (11th Cir. 2011) (per curiam); see also Rabb v. Georgia Pac., LLC, No. CA 09-0420-C, 2010 WL 2985575, at *15 n.35 (S.D. Ala. July 26, 2010) (any potential causation between Plaintiff's filing discrimination charge with the EEOC and his termination was severed by Plaintiff's misconduct). Specific to this context, "even if a plaintiff is terminated in close temporal proximity to a complaint of discrimination, a plaintiff's intervening act of misconduct severs the causal connection between the employee's initial complaint of

11

discrimination and the decision to terminate h[is] employment." DeLeon v. ST Mobile Aerospace Eng'g, Inc., 684 F. Supp. 2d 1301, 1325 (S.D. Ala. 2010).

In Hankins v. AirTran Airways, Inc., for example, even though the plaintiff had recently reported racial bias, raising her voice at a coworker was an intervening act of misconduct sufficient to sever the causal connection between her protected activity and her termination. 237 F. App'x at 520–21; see also Kiel, 169 F.3d at 1136 (where plaintiff insulted his supervisor and "indulged in an angry outburst in the presence of co-workers," there was "intervening unprotected conduct [that] eroded any causal connection . . . suggested by the temporal proximity of his protected conduct and his termination"); Dent v. Ga. Power Co., No. 1:10-CV-3401-RWS-JFK, 2012 WL 12896233 (N.D. Ga. July 9, 2012), *report and recommendation adopted sub nom.* Dent v. Ga. Power, No. 1:10-CV-3401-RWS, 2012 WL 12898003 (N.D. Ga. July 31, 2012), *aff'd sub nom.* Dent v. Ga. Power Co., 522 F. App'x 560 (11th Cir. 2013) (causal connection severed where plaintiff "behaved in a belligerent manner" during meeting with superiors). The causal connection can even be severed when the protected activity was the *same day* as the misconduct, as it was here. DeLeon, 684 F. Supp. 2d at 1325–26 (finding causal connection severed when plaintiff complained of racial discrimination and then failed to show up to work the same day). Though "contesting an unlawful employment practice is protected conduct, the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace." Kiel, 169 F.3d at 1136.

Plaintiff has presented no evidence of causation other than temporal proximity,[8] and though Plaintiff denies making threats, Plaintiff does not dispute that, on May 17, 2022, he stood up at the

---

[8] Plaintiff also points to another employee's termination to show an additional supposed example of retaliatory termination following complaints of racism. (Doc. 24, p. 4.) This, however, is immaterial to the causation element, because Plaintiff does not contend that Doyal-Monks, the decision-maker, knew of that employee's protected activity. See Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir.

conference table, raised his voice at Doyal-Monks who was sitting in front of him, loudly criticized her qualifications and skills, yelled at her in the parking lot in the presence of other employees, cursed while doing so, and later returned to the facility. (Doc. 28-1, pp. 8–9; doc. 21-4, p. 20; doc. 28-3, p. 5; doc. 28-2, p. 4.) The undisputed facts of May 17, 2022, constitute an intervening act of misconduct sufficient to sever any causal connect between Plaintiff's complaints and his termination. As a result, Plaintiff cannot make a prima facie showing of retaliation in violation of 42 U.S.C. § 1981.

### B.   Plaintiff's Pretext Rebuttal

Moreover, even if Plaintiff had made the requisite showing of causation, the remaining stages of the McDonnell Douglas burden-shifting framework are effectively the same as they are under Plaintiff's racial discrimination claim. That is, even if Plaintiff makes a prima facie case of retaliation, the burden would again shift to Defendant to articulate a legitimate, nondiscriminatory reason for the termination, which Plaintiff would then have to show is pretext. Gogel v. Kia Motors Mfg. of Ga., Inc., 967 F.3d 1121, 1136 (11th Cir. 2020).

Relying on the events of May 17, 2022, Defendant has offered a legitimate, nondiscriminatory reason for Plaintiff's termination, which leaves Plaintiff with the burden of showing "*both* that the reason was false, *and* that retaliation was the real reason." Gogel, 967 F.3d at 1136. Plaintiff offers the same pretext theory and argument for his retaliation claim as he did for his racial discrimination claim, (see doc. 28, p. 14), and he has not shown why the outcome should be different in the context of his retaliation claim. Accordingly, the Court finds that

---

2002) ("plaintiff must show that the decision-makers were aware of the protected conduct"); see also Flores v. Devry Univ., Inc., 573 F. App'x 833, 835 (11th Cir. 2014) ("Actual knowledge [of the protected activity] is required.").

Plaintiff's pretext rebuttal fails, see Discussion Section I.B, supra, and thus **GRANTS** summary judgment for Defendant on Plaintiff's retaliation claim.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. 21.)  Defendant has offered a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff has failed to show that reason was pretextual.  Additionally, specific to Plaintiff's retaliation claim, Plaintiff's conduct on May 17, 2022, was an intervening cause sufficient to sever a causal connection, if any, between Plaintiff's protected activity and termination.  The Court **DIRECTS** the Clerk of Court to enter summary judgment for Defendant and to **CLOSE** this case.

**SO ORDERED**, this 27th day of March, 2024.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA